Right. We'll wait till everyone leaves. And then we'll go on. Let's see. Is everyone comfortable? Yes? Okay. Then we will go on to case number four, and that is Appeal No. 22, 1848, on Ange-Félix Snowden v. Illinois Department of Human Services. Hello, Mr. Baker. Good morning, Judge Robner, Judge Fallon, Judge St. Eve. May it please the Court, my name is John Baker, and I am here asking the Court to reverse a grant of summary judgment. The Due Process Clause provides certain rights to certain governmental employees before they can be terminated. The Loudermill decision by the Supreme Court establishes this. It requires that there be both a post-deprivation proceeding, where they can challenge their termination, and that there also be some type of a pre-deprivation proceeding. Now, here, we never challenged the post-deprivation proceeding. We acknowledged that it was sufficient. Ms. Snowden had a right to a grievance, which is sufficient process for a post-deprivation proceeding. However, the mere fact that there is a right, or there is a post-deprivation process, doesn't ameliorate the need for the pre-deprivation process. Now, the pre-deprivation process doesn't need to be as elaborate as what it would be in a, for a post-deprivation proceeding. However, there must be a process, and the thing about that process is it must be meaningful. And so, that term has been subject to a lot of different debate, but one of the things that this Court has recognized is that in order for it to be meaningful, there must have been an impartial decision-maker who was making the decision. In this case, the District Court granted summary judgment, finding that Mr. Korza, number one, was primarily that he was not the ultimate decision-maker. We believe that on summary judgment, that is wrong. We believe that a court, or excuse me, a jury, looking at these facts, could find, adequately find, both that Mr. Korza was not impartial, and that he, for all practical purposes, was the final decision-maker. But, would you agree that Mr. Korza lacked the authority to discharge Ms. Snowden? Yes. Well, then why does it matter that he conducted, you know, the investigation or, you know, recommended her discharge before the pre-disciplinary meeting in July? He, you know, he doesn't have that authority. Well, he doesn't have that ultimate authority, but from a practical perspective, he is the one who is making the decision. Under Illinois law, it ultimately goes to the Director of Central Management Services to approve the termination. There is one individual, the Director of Central Management Services, who determines every single disciplinary action over 30-day suspension for the entire state of Illinois. No one has said that CMS, there's no evidence anywhere to suggest that CMS engaged in any sort of a meaningful review. The rules make it very clear that the recommendation is to come from the agency, and in this case, that was Department of Human Services, and it was Mr. Korza who was to make that decision. So, are you arguing that because the recommendation has to come from the agency, and then it is sent to the Director, that every recommendation is rubber-stamped, and so they're not getting proper procedure? I would agree with that, but I'm not going to, but I'm not, I'm not saying that's true. I'm asking you that as a question. Is your argument that because the recommendation comes from the agency, that that's always rubber-stamped, and so, therefore, everybody who has been terminated by any agency that has to get final approval by the Director has been rubber-stamped and has not, none of those individuals have received proper procedural due process? Judge Zanove, no, I'm not making that argument. I don't disagree that CMS does ultimately rubber-stamp it, and that's the part of our argument that is important. Well, you're saying you don't disagree. I'm not saying that. It's a question. It's not a, it's not a statement. My argument is not that CMS rubber-stamps it. That's not part of my argument or our case here. What, what I am, what I am saying is CMS doesn't do a independent review. They get the documents. They get the recommendation. This is the Director of CMS, and the problem we have is the practical realities is that you eviscerate what Loudermill means when you're talking about a very large state agency. Why wouldn't it be sufficient for the Director to sign off on or make the final decision that somebody should be terminated based on an investigation and facts that are presented to him? That is, but the problem is the person who they are, they're relying wholly on is the impartial person. So then Loudermill has no point. It serves no purpose because all you have to do is if you are a large state agency, you can have anybody sit in that chair and conduct the pre-disciplinary hearing, make a recommendation. It doesn't matter if they're a large state agency, they have no idea, who has no idea what has happened down below, who is, who says, well, I'm impartial. I didn't have any preconceived notions. So what's your evidence that, that's in the record that supports your assertion that the Director here just rubber-stamped the decision of a biased decision maker? There's no evidence that the Director did anything. There's no evidence, the evidence is that there is no evidence. You know, this is, again, this is summary judgment in what the Director of CMS reviewed anything, that anything was presented to the Director, that the Director considered Snowden's statements. None of that. What we know, what we know is before the recommendation was ever made, CORSA called Labor Relations within Department of Human Services to ensure that if it went to a grievance, that CMS would ultimately stand behind them. He got the response that yes, that they would stand behind that. So then he said, okay, well, then I'm going to recommend the termination. So what we know based on that, or at least what a jury could conclude based on that, is that there was information beforehand that CORSA believed that this, that this was going to stick. That's what he testified to. Did you have the opportunity in discovery to depose the individuals who received CORSA's recommendation and Ms. Snowden's rebuttal, and who made the discharge decision? Did you have that opportunity? I don't believe that there was ever any evidence on who ultimately made the decision. Well, were Mr. CORSA's superiors were never asked about what they reviewed? No, no, they were not. Ms. Wade was, Ms. Wade was not discussed. There was no documentary evidence from presented from her showing that she had reviewed it. She never signed an affidavit stating that she had reviewed it. There was nothing that was presented by Ms. Wade. What I'm, what I'm asking is in discovery, didn't you have that opportunity to depose these people and learn what happened? Judge Rotner, I believe, I mean, theoretically, yes, we did have the, the opportunity. You know, I think I, I don't recall, this was a, this was a long time ago that we did the discovery in this case. I don't recall why it was that certain people were or were not deposed. But I, but I do believe, again, the question is based on the evidence that's in the record, and there is no evidence in the record that anybody looked at anything. But you're asking us to draw an inference that the director of the CMS is the only one with authority to do this. The information was sent to the director of CMS. The director signed and, and made the determination that she was going to be terminated. You're now asking us to make an inference that that wasn't enough without any evidence in the record. Well, I, I think that the evidence in the record is that from beforehand, he was told, CORSA was told CMS would agree and wouldn't, and would support them when it ultimately went to a grievance. So I, I do think that there's evidence in the record to show that CORSA at least believed that CMS was on board with this beforehand, Judge Saini. So I, you know, I, I do understand, I do understand the points that are being raised, but, but I think from a practical perspective, CMS is a huge state agency. The we're going to allow the director of central management services to be the one who makes the ultimate decision. You're, you're effectively eviscerating. So that comes back to my earlier question. It sounds like you're arguing that it, it would never be sufficient. No, that's not, that's, I don't believe that because you, it would require, in order for it not to be sufficient, it would require non, it would require a, a fair decision maker. Most of the time when there is a person in CORSA's shoes, they are fair. Most of the, you know, 99% of the time they are fair. So no, I wouldn't argue that every time it's unfair. The idea is the person who is sitting there reviewing it, making the decision from all practical purposes, making the recommendation, they have to be fair. And so that is what I'm arguing, that CORSA himself was not fair in this And I will give you a minute or two for rebuttal, of course. Hello, Ms. Gottlieb. Good morning. May it please the court. I am assistant attorney general, Anna Gottlieb for defendants at police. Plaintiff challenges the process she received after an investigation revealed that she falsified records to the Social Security Disability Benefits recipients. This court should affirm summary judgment on the due process claim against Mr. CORSA, which is the only claim pursued on appeal for three reasons. First, no reasonable jury could find that plaintiff did not receive sufficient pre-deprivation process where she present was presented with the charges on multiple occasions and given an opportunity to present a rebuttal. Second, the plaintiff also had post-deprivation process available to her through the grievance process and the collective bargaining agreement. She took full advantage of that process, further providing an additional safeguard. And as counsel just noted, this process was never challenged. The adequacy of that process was not challenged before the district court or here on community to the extent there is a question about whether his conduct could have amounted to a due process violation. The law was not clearly established to show that an individual could not make a recommendation after an investigation but before considering the rebuttal in a case, particularly where, like here, there was sufficient post-deprivation process and others were involved in the decision-making process. In response to the notion that Mr. Corza was a biased decision-maker, there is no evidence of that in this record. Rather, there is evidence to the contrary. As an initial matter, the Supreme Court has noted that decision-makers are presumed to act with integrity and honesty. The Supreme Court has also told us that to overcome that presumption, there needs to be a showing of pecuniary interest or some sort of personal bias. And this court has referred to actual prejudgment of a case. But in Wallace v. Tilly, this court has also set the bar for that standard to be very high by noting that an individual must have definitely made up their mind before considering a hearing or any kind of rebuttal. Mr. Corza's actions don't fit any of these. He testified that at the time of the pre-deprivation meeting, he had not made up his mind about the discipline because it, quote, dependent on what was going to be in the rebuttal. There's no evidence contradicting the statement, and in fact, there's a summary of the pre-deprivation meeting that also notes the discipline was undetermined at that time. And separately, Mr. Corza was not the one ultimately responsible for the decision-making here. Rather, pursuant to statute, the Illinois Central Management Services is the only agency that could have made the decision to terminate. After consultation— We know that Mr. Corza passed along Ms. Snowden's rebuttal along with his comment that it didn't change his mind. But does the record affirmatively reflect that one or more of his superiors reviewed the rebuttal, made an independent evaluation of the rebuttal? We don't have evidence about who considered the rebuttal, but we do have—we do have evidence about the discussions that took place before—after Mr. Corza made the initial determination. There's an email that reflects that the recommendation, which was sent to Quinnetta Wade, was discussed with someone else in the CMS—I'm sorry, in the IDHS Labor Bureau, and that was eventually discussed with CMS. As for the rebuttal itself, we don't have particular evidence who considered it after Mr. Corza passed it on, but he did testify that he did pass it on. And also, with regard to the rebuttal, there's nothing in the rebuttal that specifically addressed the charges made against Ms. Snowden. Rather, you know, there was just a that don't really rebut the actual charges presented there. Okay. But to the extent there is any question about the pre-deprivation process here, there's two separate issues that also provide independent bases for affirming summary judgment. The first one, again, is the post-deprivation process. That was never challenged, and this court in Wallace v. Tilly also noted that even if there is some existence of prejudice in the pre-deprivation phase, the existence of post-deprivation process can take away any of that prejudice. And this court has held in Winston and Boteta that the grievance process set out by a collective bargaining agreement is sufficient to meet due process. And separately, as noted, to the extent there is any question about the conduct here, qualified immunity would also protect Mr. Corza because there are no cases that specifically talk about, you know, providing a recommendation before a hearing or before a hearing in many employment contexts where an individual must make a determination about whether the charges would warrant a particular type of discipline if proven. The case is relied on by plaintiff for this point, do not provide the law with sufficient particularity that would have put the defendants on notice that this was a due process violation. So for these reasons, if there are no further questions, we ask this court to affirm. Thank you very much. Thank you very much, Ms. Gottlieb. Mr. Baker? You used your time, but we'll give you the two minutes. Go ahead. Thank you for your indulgence, Judge Rovner. I do greatly appreciate it. I want to address a couple of points. Number one, this idea that there was, that there's no evidence that Corza was not impartial. I mean, it's that there's never going to be case where there's more evidence. You know, here we have the CMS person, or excuse me, the labor relations person telling her, you schedule a pre-D meeting and lay it out with her. We'll give her the five days to rebut anything, and then we will put her on the suspension pending discharge. I mean, that's basically saying, hey, yeah, go ahead and have a hearing. We've already decided what we're going to do. That's what we're going to do. He then makes the recommendation, which is very clear he is recommending termination. He knows, so he knew that. This is not somebody who is impartial. He has made up his mind already. That's evidence. Again, we're talking about could a jury look at that and make that conclusion based upon this evidence. Mr. Baker, did you raise this argument in the district court? I'm sorry, which argument, Judge? Did you raise this argument about Corza? Yes. In the district court? Yes. So you didn't waive this? The Corza argument? Yeah. No, there's a reference in their brief about waiver, I think, that talks about the fact that we didn't specifically cite to the CMS rule that talks. So I think that was their argument on waiver, but as far as addressing the Corza issue, that was addressed before the immunity. This court has made it clear that the decision-maker must be impartial. Corza knew that any reasonable decision-maker would know that. I see that my time is expiring again. I thank the court for its indulgence, and we would ask that the court reverse and remand this matter for trial. Thank you. Thank you very much. Thanks to both Ms. Gottlieb and Mr. Baker. And case is taken under advisement.